IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DUSTIN HOOSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-244 (MTT) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant United States of America has moved for summary judgment. Doc. 23. For the following reasons, the Government's motion (Doc. 23) is **GRANTED**.

## I. BACKGROUND[1]

On November 4, 2015, Plaintiff Dustin Hoose, who had just made a delivery to the Robins Air Force Base Commissary, was injured while leaving the Commissary parking lot when a wind-blown gate arm hit his delivery truck. Doc. 25 at 22:15−17, 34:13−18, 36:1−3, 53:25−54:9, 62:22−63:23, 74:18−94:15. The gate, which secured the only entrance to and exit from the parking lot, simply consisted of two swinging metal arms that RAFB personnel would close when the parking lot was closed. Doc. 31 at 13:9−18. Because he regularly made deliveries to the Commissary, Hoose was very familiar with the gate. Doc. 25 at 21:5−17. Sometimes, when he arrived to make a delivery, the gate would be locked, and he would have to wait until the gate was

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

opened. *Id.* at 33:1−5. When the gate was open, the arms were not "secured." Doc. 31 at 13:9−21. Rather, personnel would simply push the arms past the curb and out of the roadway. *Id.* On five or six occasions, Hoose saw the gate arms swing a few inches back and forth on windy days. Doc. 25 at 37:23−25. He recognized this was a potential "hazard" based on his knowledge of Occupational Safety and Health Administration "laws." *Id.* at 38:7−11, 40:10−22. Consequently, he reported the hazard to his supervisor approximately a month before his accident.[2] *Id.* at 38:12−39:13. However, Hoose never reported the hazard to RAFB personnel, and there is no evidence that RAFB personnel knew that winds could blow the gate arms into the roadway. *Id.* at 39:14−15; Doc. 31 at 16:2−17, 17:9−15. In fact, according to Michael Graham, who opened and closed the gate each day, not even a previous F-1 tornado caused the gate arms to move. Doc. 31 at 15:6−11.

The day Hoose was injured was a windy day, but the gate arms were stationary when he entered the parking lot. Doc. 25 at 43:18−21, 44:15−22. After making his delivery and as he approached the gate, "he noticed that one of the gates had swung several feet back into the right side of the roadway." Doc. 30-1 at 3 (citing Doc. 25 at 52:17−24, 53:2−10). To avoid the gate arm, he moved to the center of the roadway. Doc. 25 at 53:3−14. As he neared the gate, he felt a gust of wind through his truck's open windows and then saw the right gate arm swing further into the roadway and toward his truck. *Id.* at 53:24−54:15. The gate arm was "not like really fast, but not creeping. It was . . . almost like a push on the gate." *Id.* at 56:3−6. The gate arm hit

---

[2] Hoose does not claim that the Government was negligent *per se*. *See generally* Doc. 1.

the fender, and then hit the windshield.³ *Id.* at 56:19−24. The windshield broke, and the gate arm struck Hoose's right arm and the back of his head. *Id.* Hoose claims he suffered a knot on the back of his head which has resulted in ongoing headaches, anxiety, and memory loss. *Id.* at 63:6−10, 68:14−19, 92:17−93:13.

Hoose alleges in his complaint that the government was negligent for failing to secure the gate. *See generally* Doc. 1.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.' In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."⁴ *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)) (other citation omitted). "Only when that burden has been met does the burden shift to

---

[3] In an accident report signed by Hoose, Hoose stated that he "hit the gas instead of the brakes" when the "gate came up and through the windshield and out the drivers window." Doc. 25-1 at 13. Hoose then stated at his deposition that he does not remember giving any statement that he "hit the gas" because he has "had a rough time trying to remember exactly everything after the gate coming through the windshield" due to "the blow to [his] head" during the accident. Doc. 25 at 57:12−58:18, 68:16−19, 72:1−3. But he does not deny writing and signing the statement under oath. Docs. 25 at 58:14−59:20; 25-1 at 13.

[4] When the defendant raises the affirmative defense of assumption of the risk, it bears the burden of proving that affirmative defense at trial. *Bass Custom Landscapes, Inc. v. Cunard*, 258 Ga. App. 617, 620, 575 S.E.2d 17, 20−21 (2002) (citations omitted).

3

the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In determining whether a genuine dispute of material fact exists, the Court must avoid weighing conflicting evidence or making credibility determinations. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### III. DISCUSSION

**A. The FTCA and Applicable Law**

The Government is generally immune from suit unless it waives sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Monzon v. United States*, 253 F.3d 567, 570 (11th Cir. 2001). Under the FTCA, the Government waives sovereign immunity in actions by private parties for torts committed by employees acting on behalf of the Government if a private individual would be liable to the plaintiff. 28 U.S.C. § 1346(b)(1). FTCA claims are governed by the substantive law of the state where the alleged act or omission giving rise to liability occurred. *Id.* The alleged omission in this case occurred on RAFB in Warner Robins, Georgia, and Georgia law thus applies.

4

In Georgia, an owner or occupier of land owes a duty to invitees[5] to exercise ordinary care to keep the premises and approaches safe. O.C.G.A. § 51-3-1. Generally, in a premises liability action, the "plaintiff must prove that (1) the owner or proprietor had actual or constructive knowledge of the hazard and (2) the plaintiff lacked knowledge of the hazard despite exercising ordinary care." *Kennestone Hosp., Inc. v. Harris*, 285 Ga. App. 393, 394, 646 S.E.2d 490, 493 (2007) (quotation marks and citation omitted). The Government, in its motion and briefs, does not argue that Hoose cannot meet *his* burden of proving the Government's superior knowledge of the hazard.[6] Rather, the Government argues that it has, as a matter of law, established its affirmative defense of assumption of risk.[7] Doc. 23-1 at 5−7.

**B. Assumption of the Risk**

Assumption of the risk bars a plaintiff's recovery when the defendant establishes that the plaintiff had full knowledge of the danger associated with his action, understood

---

[5] The Government does not dispute that Hoose was an invitee.

[6] If the superior knowledge rule applies here, the Government clearly would be entitled to summary judgment because there is no evidence the Government knew or should have known that windy conditions could cause the gate arms to swing into the roadway. And even if it could be said the Government had actual or constructive knowledge of the hazard, it is undisputed that Hoose too had actual knowledge of the hazard. Doc. 25 at 19:25−20:8, 30:21−31:1. Consequently, the Court asked the parties to address the superior knowledge rule at oral argument. Doc. 33. Hoose argued that the superior knowledge rule does not apply because the Government, through its employees, created the hazardous condition. *See id.* That is not persuasive for two reasons. First, there is no evidence the gate was negligently constructed or maintained, other than the mere fact that it was unsecured. It is clear that Hoose's case is built upon the argument that the Government should have known that the gate, even though not a hazard in itself, could become a hazard under windy conditions. Second, even if the Government did create a hazard and thus could be said to have at least constructive knowledge of the hazard, Hoose's knowledge was at best equal to the Government's. Of course, both Hoose's burden to prove the Government's superior knowledge and the Government's burden to prove its assumption of risk defense turn on almost the same facts. Although it seems clear Hoose cannot meet his burden to prove the Government's superior knowledge, the Court will rule on the grounds raised by the Government.

[7] The Government also argues that Hoose's acceleration of his truck as he approached the gate while leaving the parking lot was the intervening cause of his injuries. Doc. 23-1 at 8−10. Because the Court decides this case on the Government's assumption of risk defense, it is unnecessary to address this argument.

and appreciated the risks of the danger, and voluntarily chose to act without coercion. *Johnson St. Props., LLC v. Clure*, 302 Ga. 51, 57, 805 S.E.2d 60, 67 (2017) (citation omitted). "Although assumption of the risk often presents a question for the jury, the issue should be decided by the court as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." *Kensington Place Owners Ass'n, Inc. v. Thomas*, 318 Ga. App. 609, 611−12, 734 S.E.2d 445, 448 (2012) (quotation marks and citation omitted). In the view of this Court, only in the clearest of cases should the issue of assumption of risk be taken from the jury. This is one of those rare cases.

Hoose, quoting *Little Rapids Corp. v. McCamy*, argues that "'assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.'" Doc. 30-1 at 6 (quoting 218 Ga. App. 111, 113, 460 S.E.2d 800, 803 (1995) (quotation marks and citations omitted)). Far from relieving the Government of its obligations, Hoose argues that by reporting the hazard and by his careful actions to navigate the hazard, he acted reasonably to avoid the hazard. *Id.* at 6−7. As *Little Rapids* makes clear, this misses the point. There, the plaintiff, a truck driver, was injured by cargo negligently loaded in his truck by the defendant's employees. 218 Ga. App. at 111, 460 S.E.2d at 802. This was the first time the plaintiff had transported the defendant's products, and he was sleeping when the defendant's employees were loading the products into his truck. *Id.* Although the plaintiff realized when he began unloading that the cargo had not been loaded appropriately, he did not know the cargo could fall because he had never seen

6

cargo loaded that way.  *Id.* at 112, 460 S.E.2d at 802.  Accordingly, the Court of Appeals held that the plaintiff did not know of the precise risk involved.  *Id.* at 113, 460 S.E.2d at 803.

Here, Hoose undeniably knew and appreciated the precise risk involved.  Hoose knew and appreciated the risk of the swinging gate arm because he had previously seen the arms moving into the roadway, he knew that was a safety hazard, and he had reported the condition to his supervisor.  Doc. 25 at 19:25−20:8, 30:21−31:1.  Although knowing the precise risk posed by the unsecured gate, and knowing that risk posed immediate danger because of windy conditions, he chose to encounter that risk.

Hoose next argues his decision to encounter the hazard was not made voluntarily because driving through the gate was his sole means of leaving the Commissary parking lot.  Doc. 33.  In other words, he says he was coerced to encounter the risk.  "To coerce is to compel by force or threat."  *Smith v. NT Nails, LLC*, 331 Ga. App. 98, 99, 770 S.E.2d 646, 648 (2015) (quotation marks and citation omitted).  There is, for example, "sufficient coercion to survive a motion for summary judgment when a supervisor [gives] a direct order to an employee to perform an act, or when an employee's failure to engage in a dangerous act [will result] in termination."[8] *Naval Store Suppliers, Inc. v. Croft*, 346 Ga. App. 773, 775−76, 816 S.E.2d 301,

---

[8] Although unstated, Hoose's sole means of access argument has roots in landlord and tenant premises liability cases.  *Vinings Run Condo. Assoc, Inc. v. Stuart-Jones*, 342 Ga. App. 434, 436, 802 S.E.2d 393, 395 (2017) (citation omitted).  Thus, "when the dangerous area is the tenant's only access or only safe and reasonable access to his home, the tenant's equal knowledge of the danger does not excuse the landlord from liability for damages caused by failure to keep the premises in repair."  *Id.* (citations omitted).  "To hold otherwise . . . would make the [tenant] a captive in her own apartment . . . forcing her to abandon her very means of livelihood until such time as the [landlord] found it convenient to remedy the dangerous situation."  *Hull v. Mass. Mut. Life Ins. Co.*, 142 Ga. App. 269, 270, 235 S.E.2d 601, 601−02 (1977).  However, this exception only applies to situations involving landlords and tenants and thus does not apply here.  *Vinings Run Condo. Assoc., Inc.*, 342 Ga. App. at 436, 802 S.E.2d at 395 (citations omitted).

7

303−04 (2018) (citations omitted). But there is no coercion when an invitee chooses to knowingly walk on a recently mopped floor simply because a store employee told her to take that route, *NT Nails, LLC*, 331 Ga. App. at 100, 770 S.E.2d at 648, or when an employee slips on a hallway floor he knew to be freshly mopped when there was "no emergency whereby the [employee] was required to make use of the hallway," *Smith v. Bel-Arbor, Inc.*, 121 Ga. App. 739, 739, 175 S.E.2d 146, 147 (1970). Hoose was not ordered or compelled to drive through the gate, and he did not face any risk or sanction if he did not immediately leave the parking lot. Although, as in *Smith v. NT Nails, LLC* and *Smith v. Bel-Arbor, Inc.*, "it might have been . . . inconvenient for [Hoose] to insist upon waiting until the [gate arm was secured or the wind subsided,] . . . there is no evidence of anything preventing [him] from doing so." *NT Nails, LLC*, 331 Ga. App. at 100, 770 S.E.2d at 648.

*Naval Store Suppliers, Inc. v. Croft* is particularly instructive given Hoose's argument that driving through the gate was his only way to leave the parking lot. 346 Ga. App. at 776, 816 S.E.2d at 304. While entering the store on a 25-degree day, "Croft observed . . . a mixture of 'water/ice' that [she] had to cross to enter the building." *Id.* at 773, 816 S.E.2d at 302. Croft knew "the hazard was dangerous and once inside she reported it to a [store] employee." *Id.* at 774, 816 S.E.2d at 302. The employee told her to use the employee exit when she left but asked her not to tell anyone because the employee could get fired for allowing Croft to use it. *Id.* When Croft got to the employee door, it was locked. *Id.* at 774, 816 S.E.2d at 303. When she returned to the employee who told her to use that exit, the employee was surrounded by other employees. *Id.* Not wanting to get the employee in trouble, Croft left the store using the

8

same door she entered, and, of course, she slipped on the ice. *Id.* The court held that there is no coercion when, in a non-emergency situation, an invitee exits through a sole means of egress that she knows to be hazardous. *Id.* at 776, 816 S.E.2d at 304.

Just as Croft had "full knowledge" of the ice hazard, Hoose had full knowledge of the gate hazard. Just as Croft demonstrated her appreciation of the risk when she told an employee about the ice hazard, Hoose demonstrated his appreciation of the risk when he told his supervisor about the hazardous gate. And despite his knowledge and appreciation of the hazard and the absence of an emergency, Hoose, on a windy day, drove through the unsecured gate voluntarily and without coercion, just as Croft voluntarily and without coercion walked down the icy stairs. Accordingly, Hoose assumed the risk, and the Government cannot be held liable for his injuries.

## IV.  CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment (Doc. 23) is **GRANTED**.

**SO ORDERED,** this 13th day of November, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT
